UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| OWEN F SILVIOUS,<br><br>                    Plaintiff,<br><br>v.<br><br>UNGAR'S FOOD PRODUCTS INC., d/b/a DR PRAEGER'S SENSIBLE FOODS and SENSIBLE FOODS LLC., d/b/a DR PRAEGER'S SENSIBLE FOODS,<br><br>9 Boumar Place<br>Elmwood Park, NJ 07407<br><br>                    Defendants. | Civil Case No.<br><br>(D.C. Superior Court No. 0001795-10) |

## NOTICE OF REMOVAL

Defendants Ungar's Food Products, Inc. and Sensible Foods, LLC, erroneously sued as "Ungar's Food Products Inc., d/b/a Dr Praeger's Sensible Foods and Sensible Foods LLC., d/b/a Dr Praeger's Sensible Foods" (collectively "Defendants"), through their undersigned counsel, hereby remove this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia, pursuant to 28 U.S.C. §§1332, 1441, 1446, and 1453. As grounds for removal, Defendants state as follows:

1.      On March 16, 2010, Plaintiff, Owen F. Silvious ("Plaintiff" or "Silvious") filed a complaint against Defendants in the Superior Court of the District of Columbia, Civil Division, captioned *Owen F Silvious v. Ungar's Food Products Inc., d/b/a Dr. Praeger's Sensible Foods and Sensible Foods LLC., d/b/a Dr Praeger's Sensible Foods*, No. 0001795-10 (the "Complaint"). The action was initially assigned to the Honorable John M. Mott.

2. Defendants were served with a copy of the Summons, Complaint, and Initial Order by mail on March 24, 2010. As required by 28 U.S.C. §1446(a), a true and correct copy of all of the pleadings served upon Defendants are attached hereto as Exhibit A. Because Defendants have filed this Notice of Removal within thirty days after service of the Complaint, removal is timely under 28 U.S.C. §1446(b).

3. The Complaint alleges that Defendants violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-3901 *et seq.*, by misrepresenting the fat and calories content of certain of the Defendants' products, namely California Veggie Burgers, Tex-Mex Veggie Burgers (incorrectly identified as "Mex-Tex Veggie Burgers" in the Complaint), Broccoli Pancakes, Potato Pancakes, and Spinach Pancakes (Complaint, ¶8).

4. Defendants timely filed and served an answer and defenses to the Complaint on April 13, 2010.

5. The Complaint accurately alleges that "Defendant Ungar's Food Products Inc. is a corporation organized under the laws of the State of New Jersey," "Defendant Sensible Foods LLC is a limited liability company organized under the laws of the State of New Jersey," and that both Defendants have their principal place of business in New Jersey (Complaint ¶6).

6. The Complaint alleges that "Plaintiff is a legal resident of the State of Virginia (Complaint ¶5).

7. Accordingly, complete diversity of citizenship exists between Defendants and Plaintiff.

## I. Federal Jurisdiction Under the Class Action Fairness Act

8. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d)(2), which provides, in relevant part: "district courts shall have

2

original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." The plaintiff brings this action on behalf of himself and residents of the District of Columbia (or individuals who worked or visited the District of Columbia) and purchased the defendants' products. He estimates the number of such individuals as between 10,000 and 100,000 and seeks judgment in an amount not less than $5,000,000 but not more than $150,000,000. (Complaint ¶¶13-17).

### A. Class Action

9. CAFA defines "class action" as "any civil action filed under rules 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §1332(d)(1)(B).

10. It is undeniable that Congress intended for CAFA "to expand substantially federal court jurisdiction over class actions." S. Rep. No. 109-14, at 43 (2005); see also *Palisades Collections, LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008) (discussing the expansion of federal court jurisdiction over class actions). To that end, the legislative history charges that the definition of a "class action" must be "interpreted liberally." S. Rep. No. 109-14, at 35.

11. Specifically, the Senate Report states: "[CAFA's] application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority. Generally speaking, *lawsuits that resemble a purported class action should be considered a class action for the purpose of applying these provisions*." *Id.* (emphasis added).

12. This language is straightforward and calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name. *See id. See also State of Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 423-24 (5th Cir. 2008) (stating that a party cannot evade federal jurisdiction by failing to label its case as a class action in the pleadings, and the court must look beyond labels used in the complaint to determine the true nature of the claims).

13. Indeed, that Silvious is essentially asserting a class action is evident from his Complaint which merely recycles, word-for-word, the material allegations that form the basis of a class action complaint that was filed in the District of New Jersey on May 30, 2006, captioned *Elias, et al. v. Ungar's Food Products, Inc.* and amended on August 25, 2006, D.N.J. 06-2448 (KSH). A true and correct copy of the *Elias* amended complaint is attached hereto as Exhibit B. The *Elias* action was certified as a class action on June 30, 2008 (D.N.J. Doc. No. 70) and remains pending in the District of New Jersey.

14. Silvious admits that he first became aware of the purported basis for his allegations in the Complaint as a result of viewing the *Notice of Pendency of Class Action* ("Class Notice") dated December 17, 2008 that was published in a USA Today Newspaper dated February 17, 2009 (Complaint, ¶12). The Class consists of "All persons in the United States who purchased Dr. Praeger's Frozen California Burgers, Tex-Mex Veggie Burgers, Broccoli Pancakes, Potato Pancakes, and Spinach Pancakes from May 30, 2000 through August 31, 2007." A true and correct copy of the Class Notice is attached hereto as Exhibit C. Notably, Plaintiff failed to opt-out of the Class by the April 2, 2009 opt-out deadline. *See* email from class counsel in the *Elias* action, confirming Silvious' failure to opt out, dated April 21, 2010, a true and correct copy of which is attached hereto as Exhibit D.

15. Accordingly, although Silvious has avoided the term "class" or "class action" in his Complaint, it is clear that Silvious has brought his own copy-cat class action that must be treated as such under CAFA. *See* 28 U.S.C. §1332(d)(1)(B).

16. That Silvious's CPPA action for money damages on behalf of third parties would be considered a class action by the District of Columbia Superior Court, as well, is evident by the recent ruling that a plaintiff cannot bring a "representative" claim under the CPPA for money damages on behalf of third parties *without complying with class action procedures*. *See* Order Granting in Part and Denying in Part Def. U-Haul Int'l, Inc.'s Mot. to Dismiss, *Margolis v. U-Haul*, Case No. 2007 CA 005245 B, 2009 WL 5788369 (D.C. Super. Ct. Dec. 17, 2009). *See also Sprint Commc'ns Co. v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2545 (2008) (discussing the limited circumstances in which the claims of multiple parties may be adjudicated together and the procedural mechanisms for achieving same); *Caldwell v. Allstate Ins.*, 536 F.3d 418, 424 (5th Cir. 2008) ("[F]ederal courts look to the substance of [an] action and not the labels that the parties may attach.").

17. In *Margolis*, the District of Columbia Superior Court dismissed plaintiff's claim to recover monetary damages on behalf of absent third parties outside of the class action mechanism of District of Columbia Superior Court Rule of Civil Procedure 23 ("Rule 23"). *Margolis*, 2009 WL 5788369 at *15. After conducting an extensive analysis of the meaning, legislative history, and purpose of the CPPA, the court held that "[n]othing in the statute indicates any intention by the legislative branch to abrogate he requirements of Rule 23 in cases where an individual is seeking money damages under the CPPA on behalf of third parties. *Id.* As stated by the court in *Margolis*, the applicability of Rule 23 to claims for money damages brought under the CPPA on behalf of third parties "harmonizes the plain language of the statute

with its legislative history, which indicates that the provision of the CPPA permitting representative actions was added specifically to address claims for injunctive relief and for the equitable remedy of disgorgement, as opposed to damages."

18. After dismissal, the plaintiff in *Margolis* filed an amended complaint in the Superior Court, "in a representative capacity on behalf of the general public" and styled this time as a class action pursuant to "Superior Court Rule 23(a)," to comply with the requirements of Rule 23. *See* Amended Complaint, *Margolis v. U-Haul*, No. 2007 CA 005245 B (D.C. Super. Ct. Jan. 15, 2010).

19. While Defendants are aware of the decisions in *Breakman v. AOL, LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008) (holding that the CPPA authorizes a "separate and distinct procedural vehicle from a class action," such that Breakman's "representative" action was not removable under CAFA) and *Nat'l Consumers League* ("NCL"), ---- F.Supp.2d ----, 2010 WL 165304, 5 (D.D.C. Jan. 15, 2010) (holding that a non-profit organization's CPPA action did not require compliance with Rule 23, the action was brought solely on behalf of the general public), these decisions are distinguishable from this action because the actions in *Breakman* and *NCL* fell squarely within CAFA's express exception to removable "mass actions." 28 U.S.C. §1332(11)(B)(ii)(3). CAFA provides that when "all of the claims in the action are asserted on behalf of the general public (*and not on behalf of individual claimants* or members of a purported class) pursuant to a State statute specifically authorizing such action," the suit will not be deemed a mass action and will not be removable pursuant to 28 U.S.C. §1332(d)." 28 U.S.C. §1332(d)(11)(B)(ii)(III) (emphasis added).

20. Specifically, the court in *Breakman* found (and, in fact, the defendant conceded) that the plaintiff's action, which was *not* brought "in his individual capacity," *id.* at 101, "falls

6

squarely within the definitional exclusion of 'mass action.'" *Breakman*, 545 F.Supp.2d at 101 (emphasis added). There, the CPPA claim was brought *solely* on behalf of the general public. *See id.* at 101 (emphasis added). By contrast, Plaintiff in this action asserts that he individually "purchased defendant's products named herein in the District of Columbia between the period of May 30, 2000 and August 31, 2007" and brings his CPPA claim individually and on behalf of third parties – the "general public" (Complaint, ¶¶1, 5, 8, 12, 13, 16). Moreover, on remand to the Superior Court, the *Breakman* case was dismissed before the court had the opportunity to reach the question of the applicability of Rule 23 to "representative" claims for damages on behalf of third parties under the CPPA. *Breakman v. AOL, LLC*, No. 08-000532 (D.C. Super. Ct. unpub. order, July 31, 2008).

21. Similarly, the court in *NCL* found that "CAFA carves out an exception for private attorney general suits like NCL's" and that "NCL's suit falls squarely within this exception: it is a civil action in which the *sole* claim is asserted on behalf of the general public pursuant to a D.C. Code provision that specifically authorizes such action. As such, it is not a mass action under CAFA." (emphasis added). *NCL*, 2010 WL at *3.

22. In fact, the court in *NCL* specifically distinguished the CPPA claim asserted in *Margolis* as a "class action," unlike those asserted in *Nat'l Consumers League* and *Breakman*. *NCL*, 2010 WL at *5 ("[u]nlike Breakman and NCL, by suing on behalf of himself and others similarly situated, Margolis essentially brought a class action suit even though he did not file it as such."). In *Margolis*, just as in the Silvious matter, the plaintiff sought monetary damages (including statutory treble damages), on behalf of himself and in his representative capacity on behalf of the general public of the District of Columbia. *See Margolis*, 2009 WL at 3. Like the plaintiff in *Margolis*, Plaintiff here does not bring this action as a "private attorney general,"

7

solely on behalf of the general public, but rather as a "representative" plaintiff on behalf of himself and third parties.

### B. Diversity

23. CAFA significantly expanded federal diversity jurisdiction, eliminating the complete diversity prerequisite and requiring only that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(d)(2)(A).

24. As set forth above, complete diversity of citizenship exists between Defendants and Plaintiff.

### C. Number of Represented Persons

25. CAFA requires that the represented persons total at least 100. 28 U.S.C. §1332(d)(5). This requirement is satisfied because the Complaint alleges that the number of represented persons is "between 10,000 and 100,000 individuals" (Complaint, ¶14).

### D. Amount in Controversy

26. Under CAFA, the claims of individual class members are aggregated in order to determine the amount in controversy. 28 U.S.C. §1332(d)(6). This subsection is "interpreted expansively." S. Rep. 109-14, at *40. In fact, "[i]f a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied). And if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." *Id.*

27. The amount in controversy includes both traditional recoveries, such as restitution, as well as statutory penalties. *See Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318,

324-25 (5th Cir. 2008) (finding CAFA's amount in controversy satisfied where statutory damages could amount to $1,500 per violation of Telephone Consumer Protection Act and complaint alleged 4,000 violations); *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008) (holding CAFA's amount in controversy satisfied where defendant showed that the number of customers within the plaintiff's proposed class multiplied by the minimum statutory damages of $200 per customer exceeded $5 million); see also *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000-01 (9th Cir. 2007) (calculating aggregated amount of statutory penalties to determine whether CAFA's amount in controversy was met for alleged violations of state wage laws).

28.  Where, as here, attorneys' fees are provided by statute, they also should be included in the amount in controversy determination. *In re Lorazepam & Clorazepate Antitrust Litig.*, 2004 U.S. Dist. LEXIS 352, *15 (D.D.C. 2004) ("It is also clear that attorneys' fees should be factored into the jurisdictional amount.")

29.  Defendants dispute the allegations of wrongful conduct set forth in the Complaint but for purposes of establishing the amount in controversy, however, Defendants are entitled to rely upon the allegations of the amount in controversy specified in the Complaint. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 2004 U.S. Dist. LEXIS at *17 ("the relief sought [in the complaint on file at the time of removal] controlled the jurisdictional limit."). A defendant may expressly deny that the plaintiff is entitled to any relief while relying for the amount in controversy upon "an examination of the relief requested in the complaint." *City of University City, Missouri v. AT&T Wireless Services, Inc.*, 229 F.Supp.2d 927, 934 (E.D.Mo. 2002) (internal citation omitted). The allegations in the Complaint sufficiently demonstrate that jurisdiction is proper under CAFA. *Chain Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, No. 2:05-

CV-292-MEF, 2006 WL 1134070 (M.D. Ala. Apr. 14, 2006) (it is proper for a court to determine jurisdiction under CAFA based on the allegations in a complaint).

30. The Complaint alleges a minimum of $5,000,000 in potential damages (Complaint, ¶¶16-17).

31. Specifically, the Complaint alleges that Defendants violated the CPPA twenty times ("4 times per package x 5 products = 20 violations") (Complaint, ¶15).

32. The CPPA imposes, among other things, "treble damages, or $1,500 per violation, whichever is greater, payable to the consumer." D.C. Code §28-3905(k)(1)(A).

33. The Complaint specifically demands "statutory fees of between $500.00 and $1,500.00 per violation namely between $10,000.00 and $30,000.00 per member of the general public, including plaintiff for a total award of between $5,000,000.00 and $150,000,000 in statutory fees against defendants...plus attorney fees of not less than $500.00 per hour if plaintiff obtains the services of an attorney, plus all costs, fees and expenses of the suit and such other relief as the Court deems proper based on the facts of this case" (Complaint, ¶16).

34. Based upon alleged statutory fees between $10,000.00 and $30,000.00 per member of the general public, including plaintiff (Paragraph 16 of the Complaint), multiplied by between 10,000 and 100,000 individuals (Paragraph 14 of the Complaint), the minimum statutory damages are not a minimum of $5,000,000, as alleged in Paragraphs 15 and 16 of the Complaint, but rather, a minimum of $100,000,000. Given Plaintiff's allegations of enormous potential damages, it is clear that the jurisdictional requirement of an amount in controversy of at least $5,000,000 is reasonably likely to be satisfied.

### E. Removal Procedures

35. A copy of the Notice of Filing is attached hereto as Exhibit E. Defendants will promptly serve the Notice of Filing of Notice of Removal upon Plaintiff and will file a copy with the Clerk of the Superior Court of the District of Columbia, Civil Division, in accordance with 28 U.S.C. §1446(d).

36. Pursuant to Federal Rule of Civil Procedure 7.1(a) and Local Civil Rule 7.1, Defendants submit a Disclosure Statement herewith, as Exhibit F.

37. Pursuant to Local Civil Rule 40.5(b), Defendants will file a Notice of Related Cases concurrently herewith, as Exhibit G.

WHEREFORE, Defendants respectfully request that this case proceed in its entirety before this Court as an action properly removed.

Dated: April 23, 2010                                                            Respectfully submitted,

                                                                                                 Dechert LLP

                                                                                                 /s/ Scott M. Taggart
                                                                                                 Scott M. Taggart
                                                                                                 DC Bar ID No. 988974
                                                                                                 1775 I Street, NW
                                                                                                 Washington DC 20006
                                                                                                 Tel: (202) 261-3393
                                                                                                 Fax: (202) 261-3333
                                                                                                 Attorneys for Defendants

Of Counsel:
SAIBER LLC
David R. Gross (not yet admitted *pro hac vice*)
James H. Gianninoto (not yet admitted *pro hac vice*)
Una Young Kang (not yet admitted *pro hac vice*)
DC Bar ID No. 497833
18 Columbia Turnpike
Suite 200
Florham Park, New Jersey 07932
Tel: (973) 622-3333

Fax: (973) 622-3349

Dechert LLP
Chris Michie (not yet admitted *pro hac vice*)
Suite 500
902 Carnegie Center
Princeton NJ 08540
Tel: (609) 955-3200
Fax: (609) 955-3259

## CERTIFICATE OF SERVICE

I, Scott M. Taggart, Esquire, hereby certify that on April 23, 2010, I caused a true and correct copy of the foregoing Notice of Removal and Exhibits A through G attached thereto, to be served on the person listed below via Federal Express:

**Plaintiff**
Owen F. Silvious
16497077 FCI 2 Butner
P.O. Box 1500
Butner, NC 27509

_____
Scott M. Taggart, Esquire