## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

OWEN F SILVIOUS,

                  Plaintiff,

v.

UNGAR'S FOOD PRODUCTS INC., d/b/a
DR PRAEGER'S SENSIBLE FOODS and
SENSIBLE FOODS LLC., d/b/a DR
PRAEGER'S SENSIBLE FOODS,

                  Defendants.

Civil Case No. 1:10-cv-00639 (JDB)

## DEFENDANTS' CROSS-MOTION TO DISMISS THE ACTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendants, Ungar's Food Products, Inc. and Sensible Foods, LLC, erroneously sued as "Ungar's Food Products Inc., d/b/a Dr Praeger's Sensible Foods and Sensible Foods LLC., d/b/a Dr Praeger's Sensible Foods" (collectively, "Defendants"), hereby cross-move for a dismissal or stay of the above-captioned matter. In support of this cross-motion, the Defendants offer the accompanying Statement of Points and Authorities.

Dated: June 7, 2010

Respectfully submitted,

Dechert LLP

/s/ Scott M. Taggart
Scott M. Taggart, Esq.
D.C. Bar ID No. 988974
1775 I Street, NW
Washington DC 20006
Tel: (202) 261-3393
Fax: (202) 261-3333
Attorneys for Defendants

Of Counsel:
SAIBER LLC
James H. Gianninoto (not yet admitted *pro hac vice*)
Una Young Kang (not yet admitted *pro hac vice*)
D.C. Bar ID No. 497833
18 Columbia Turnpike
Suite 200
Florham Park, New Jersey 07932
Tel: (973) 622-3333
Fax: (973) 622-3349

Dechert LLP
Chris Michie (not yet admitted *pro hac vice*)
Suite 500
902 Carnegie Center
Princeton NJ 08540
Tel: (609) 955-3200
Fax: (609) 955-3259

## CERTIFICATE OF SERVICE

I, Scott M. Taggart, Esq., hereby certify that on this June 7, 2010, I electronically filed with the Clerk of the Court the foregoing Cross-Motion to Dismiss or Stay and Opposition to Plaintiff's Motion to Remand, Memorandum of Points and Authorities in support thereof, attached Declaration of James H. Gianninoto, Esq., and accompanying exhibits, and proposed order via CM/ECF, and service was effected upon Plaintiff via Federal Express on this same date:

Owen F. Silvious
16497077 FCI 2 Butner
P.O. Box 1500
Butner, NC27509
Plaintiff

/s/ Scott M. Taggart
Scott M. Taggart, Esq.
D.C. Bar ID No. 988974

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

OWEN F SILVIOUS,

               Plaintiff,

     v.

UNGAR'S FOOD PRODUCTS INC., d/b/a
DR PRAEGER'S SENSIBLE FOODS and
SENSIBLE FOODS LLC., d/b/a DR
PRAEGER'S SENSIBLE FOODS,

               Defendants.

Civil Case No. 1:10-cv-00639 (JDB)

## DEFENDANTS' STATEMENT OF POINTS AND AUTHORITIES
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND IN SUPPORT OF
## CROSS-MOTION TO DISMISS OR STAY THE ACTION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

   A.  The Instant Action ................................................................................. 3

   B.  The Parallel *Elias* Class Action ................................................................ 4

PLAINTIFF'S MOTION FOR REMAND MUST BE DENIED ................................. 6

   I.  The Complaint on File at the Time of Removal is Controlling ................. 6

   II.  Defendants' Notice of Removal Was Timely ......................................... 7

   III.  This Court Has Jurisdiction Under the Class Action Fairness Act .......... 9

     A.  Class Action ................................................................................... 10

     B.  Diversity ......................................................................................... 16

     C.  Number of Represented Persons ..................................................... 16

     D.  Amount in Controversy .................................................................. 16

   IV.  Plaintiff's Proposed "Amended" Complaint Alleges a Class Action ...... 19

DEFENDANTS' CROSS-MOTION TO DISMISS OR STAY SHOULD BE GRANTED ....... 21

   V.  This Action Must Be Dismissed or Stayed In Accordance With The First-Filed Rule ...... 21

CONCLUSION ................................................................................................... 26

# TABLE OF AUTHORITIES

*Breakman v. AOL, LLC,*
    545 F.Supp.2d 96 (D.D.C. 2008) ........................................................................13, 14, 15

*Chain Drug, Inc. v. Aetna U.S. Healthcare, Inc.,*
    2006 WL 1134070 (M.D. Ala. 2006) ...............................................................................18

*Colorado River Water Conservation District v. U. S.,*
    424 U.S. 800 (1976).........................................................................................................21

*\*Columbia Plaza Corp. v. Sec. National Bank,*
    525 F.2d 620 (D.C. Cir. 1975) ..............................................................................21, 22, 23

*Elias, et al. v. Ungar's Food Products, Inc.,*
    D.N.J. 06-2448 (KSH) (2006)..................................................4, 5, 11, 21, 22, 23, 24

*\*Entines v. United States,*
    495 F.Supp.2d 84 (2007) .................................................................................................22

*\*Freeport-McMoRan, Inc. v. K N Energy,*
    498 U.S. 426 (1991)...........................................................................................................6

*Gene and Gene LLC v. BioPay LLC,*
    541 F.3d 318 (5th Cir. 2008) ............................................................................................17

*Grayson v. AT&T,*
    980 A.2d 1137 (D.C. Cir. 2009) ......................................................................................13

*Grayson v. AT&T,*
    989 A.2d 709 (D.C. Cir. 2010) ............................................................................13, 14, 15

*Hastings v. U.S. Senate,*
    887 F.2d 332 (D.C. Cir. 1989)..........................................................................................21

*Holmes v. PHI Service Co.,*
    437 F.Supp.2d 110 (D.D.C. 2006) .....................................................................................9

*\*Kerotest Mfg. Co. v. C-O-Two Fire Equip Co.,*
    342 U.S. 180 (1952)..........................................................................................................22

*\*Kopff v. World Research Group, LLC,*
    298 F.Supp.2d 50 (D.D.C. 2003) .......................................................................................9

*In re Lorazepam & Clorazepate Antitrust Litigation,*
    2004 U.S.Dist. LEXIS 352 (D.D.C. 2004) ...................................................17, 18

*Lowdermilk v. U.S. Bank National Association,*
    479 F.3d 994 (9th Cir. 2007) ...................................................................17

*\*Margolis v. U-Haul,*
    2009 WL 5788369 (D.C. Super. Ct. December 17, 2009)......................12, 13, 14, 15, 20

*\*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,*
    526 U.S. 344 (1999).................................................................................8, 9

*National Consumers League v. General Mills, Inc.,*
    680 F.Supp.2d 132 (D.D.C. 2010) .............................................................15

*Nwachukwu v. Karl,*
    223 F.Supp.2d 60 (D.D.C. 2002) ...............................................................17

*Palisades Collections, LLC v. Shorts,*
    552 F.3d 327 (4th Cir. 2008) ...................................................................10

*\*St. Paul Mercury Indemnity Co. v. Red Cab Co.,*
    303 U.S. 283 (1938)...............................................................................6, 18

*State of Louisiana ex rel. Caldwell v. Allstate Insurance Co.,*
    536 F.3d 418 (5th Cir. 2008) ...............................................................11, 12

*Strawn v. AT&T Mobility LLC,*
    530 F.3d 293 (4th Cir. 2008) ...................................................................17

*\*Washington Metropolitan Area Transit Authority v. Ragonese,*
    617 F.2d 828 (D.C. Cir. 1980) ...................................................................22

*Williams v. Purdue Pharma Co.,*
    2003 WL 24259557, 5 (D.D.C. 2003) ...........................................................6

*\*Zuurbier v. MedicalStar Health, Inc.,*
    306 F.Supp.2d 1 (D.D.C. 2004) ...................................................................6

## FEDERAL STATUTES

28 U.S.C. §1332.................................................................1, 4, 6, 9, 10, 12, 13, 16

28 U.S.C. §1446...........................................................................................7, 8, 9

## <u>STATE STATUTES</u>

D.C. Code §28-3901 ..................................................................................................1

D.C. Code §28-3905(k)(1)........................................................................................18

**PRELIMINARY STATEMENT**

Plaintiff Owen F. Silvious ("plaintiff" or "Silvious") commenced this "copycat" action against defendants Ungar's Food Products, Inc. and Sensible Foods, LLC, (collectively "defendants"), in the District of Columbia Superior Court, asserting word-for-word the exact same allegations as alleged in a 2006 nationwide class action lawsuit currently pending against the exact same defendants in the U.S. District Court for the District of New Jersey. Specifically, plaintiff seeks statutory fees and attorneys' fees "on behalf of himself and the general public," claiming that defendants violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-3901 *et seq.*, by misstating the fat and calories content of certain of the defendants' products. After defendants removed this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d)(2), plaintiff filed a proposed amended complaint, attempting to recast his action as a private attorney general suit brought on behalf of the general public rather than a class action. In support of his motion for remand, plaintiff argues that: (1) defendants' notice of removal was untimely; and (2) his proposed amended complaint divests this Court of jurisdiction. Defendants now oppose plaintiff's motion for remand, and cross-move to dismiss, or in the alternative, stay this duplicate action in accordance with the first-filed rule.

First, it is well-established that the original Complaint on file at the time of removal is the only relevant pleading for purposes of jurisdiction. Therefore, plaintiff cannot divest this Court of its jurisdiction by seeking to amend his Complaint in a transparent attempt to forum-shop for the venue that suits his preferences.

Second, contrary to plaintiff's argument that the thirty-day period for removal should be measured from the time he mailed a draft complaint to defendants prior to commencing this action, the time for removal does not begin to run until a summons has been

formally served on a defendant. Here, there is no evidence that plaintiff's draft complaint was actually filed, much less served with a copy of the summons (and no evidence of the summons itself). Because defendants filed their notice of removal within thirty-days from their receipt of plaintiff's summons and complaint, the notice of removal was timely.

Third, as set forth in defendants' notice of removal and again herein, this Court has jurisdiction over this action pursuant to CAFA. Contrary to plaintiff's arguments, he plaintiff cannot bring a "representative" claim for money damages on behalf of himself and third parties and call it a private attorney general suit – a distinct type of action where a plaintiff only seeks money damages payable to the consumer, and does not seek money damages on behalf of himself – simply to avoid federal jurisdiction. Moreover, by plaintiff's own allegations, this action clearly satisfies all of the requirements for CAFA jurisdiction, namely diversity of citizenship, number of represented persons and amount in controversy.

Fourth, while the original complaint on file at the time of removal is controlling for purposes of jurisdiction, plaintiff's proposed amended complaint is nevertheless a class action suit. Plaintiff's attempt to re-characterize this action as a private attorney general suit in his proposed amended pleading is belied by the fact that he continues to seek damages for himself and third parties. Thus, notwithstanding plaintiff's efforts to manipulate semantics, the substance of the allegations and nature of the relief sought can only constitute a class action pursuant to CAFA.

Finally, defendants hereby cross-move to dismiss or, in the alternative, stay this action as it is duplicative of the first-filed, more comprehensive, nationwide class action pending in the District of New Jersey. In fact, as he admits to having purchased defendants products during the class period, and has failed to opt-out of the Class, plaintiff is a member of the Class

and a party to that action.  Therefore, because plaintiff's action is merely a duplication of the

first-filed New Jersey action, plaintiff's Complaint herein should be dismissed or stayed.

 For these reasons, plaintiff's motion for remand should be denied, and this Court

should dismiss or stay plaintiff's "copycat" action in the interest of comity and judicial economy.

## **FACTUAL BACKGROUND**

A. The Instant Action

 Prior to commencing this action, plaintiff sent defendants a number of pre-suit

letters threatening litigation and offering to settle his class action claims.  In his first letter dated

January 12, 2010, plaintiff stated, "[m]y civil action lawsuit will be based on the *same* basic

allegations as filed in the federal court in Newark against Unger's Food Products Inc., under

Civil Action No. 06-cv-2448." (See Letter dated January 12, 2010 attached hereto as Exhibit A

to the Certification of James H. Gianninoto, Esq. ("Gianninoto Cert.")) (emphasis added).  In

another pre-suit letter dated February 17, 2010, plaintiff reiterated that *"[t]he allegations will be*

*the same as the allegegations [sic] filed against your companies in the United States District*

*Court in Newark, New Jersey."* (See Letter dated February 17, 2010, Gianninoto Cert., Exhibit

B) (emphasis added).  By way of a letter dated March 4, 2010, plaintiff included copy of his

draft complaint which he threatened to file if defendants did not agree to pay his monetary

demand.  (See Letter dated March 4, 2010, Gianninoto Cert., Exhibit C).

 Plaintiff actually commenced this action on March 16, 2010, filing a Complaint

against Defendants in the Superior Court of the District of Columbia, Civil Division, captioned

*Owen F Silvious v. Ungar's Food Products Inc., d/b/a Dr. Praeger's Sensible Foods and*

*Sensible Foods LLC., d/b/a Dr Praeger's Sensible Foods*, No. 0001795-10 (the "Complaint").

(See Docket Entry No. 1, Notice of Removal, Exhibit A).  Thereafter, the Superior Court of the

District of Columbia certified that the Summons, Complaint, and Initial Order were mailed to defendants on March 22, 2010. (See Docket Entry No. 1, Notice of Removal, Exhibit A). Defendants received a copy of the Summons, Complaint, and Initial Order by mail on March 24, 2010. (See Docket Entry No. 1, Notice of Removal, Exhibit A). Less than thirty days later, on April 23, 2010, defendants filed a timely notice of removal pursuant to 28 U.S.C. §§1332, 1441, 1446, and 1453. (See Docket Entry No. 1, Notice of Removal). Defendants filed their answer to plaintiff's Complaint on May 13, 2010. (See Docket Entry No. 4, Answer to Plaintiff's Complaint).

On May 17, 2010, plaintiff attempted to file a proposed Amended Complaint without seeking leave of Court. (See Docket Entry No. 5, Motion to Amend Complaint). The Court has indicated that it will treat plaintiff's proposed pleading as a motion to amend the Complaint, and has not yet ruled on that motion. (See Docket Entry No. 5, Motion to Amend Complaint). On May 24, 2010, plaintiff filed this motion for remand. (See Docket Entry No. 7, Notice of Removal). Apparently in further support of his motion for remand, plaintiff filed a motion for the Court to take judicial notice of two opinions on June 3, 2010. (See Docket Entry No. 8, Motion for Court to Take Judicial Notice).

B. The Parallel *Elias* Class Action

Plaintiff's Complaint in the instant action merely recycles, word-for-word, the material allegations that form the basis of a class action complaint that was filed in the District of New Jersey on May 30, 2006, captioned *Elias, et al. v. Ungar's Food Products, Inc.* and amended on August 25, 2006, D.N.J. 06-2448 (KSH). (See Docket Entry No. 1, Notice of Removal, Exhibit B). According to plaintiff, he first became aware of the purported basis for his allegations in the Complaint as a result of viewing the *Notice of Pendency of Class Action*

("Class Notice") in a USA Today Newspaper dated February 17, 2009. (See Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶12). In fact, plaintiff admits to having intentionally crafted his Complaint in the instant suit to mirror that of the *Elias* class action. In his pre-suit correspondence threatening litigation, plaintiff specifically stated, "[m]y civil action lawsuit will be based on *the same basic allegations* as filed in the federal court in Newark against Unger's Food Products Inc., under Civil Action No. 06-cv-2448." (See Letter dated January 12, 2010, Gianninoto Cert., Exhibit A) (emphasis added). Similarly, in a subsequent pre-suit letter to defendants, plaintiff reiterated that "*[t]he allegations will be the same* as the allegegations [sic] filed against your companies in the United States District Court in Newark, New Jersey." (See Letter dated February 17, 2010, Gianninoto Cert., Exhibit B) (emphasis added).

The *Elias* action was certified as a nationwide class action on June 30, 2008 (D.N.J. Docket Entry No. 70) and remains pending in the District of New Jersey. The *Elias* Class consists of "All persons in the United States who purchased Dr. Praeger's Frozen California Burgers, Tex-Mex Veggie Burgers, Broccoli Pancakes, Potato Pancakes, and Spinach Pancakes from May 30, 2000 through August 31, 2007." (See Docket Entry No. 1, Notice of Removal, Exhibit C). Plaintiff is a member of the *Elias* class, as he admits to having "purchased defendant's product's stated herein in the District of Columbia during the [Class] period May 30, 2000 and August 31, 2007." (See Docket Entry No. 5, Motion to Amend Complaint at ¶5). Indeed, Class counsel has confirmed plaintiff's failure to opt-out of the *Elias* Class. (See Docket Entry No. 1, Notice of Removal, Exhibit D). Because plaintiff has failed to opt-out of the Class by the April 2, 2009 opt-out deadline, plaintiff is a member of the *Elias* Class and a party to that action.

## PLAINTIFF'S MOTION FOR REMAND MUST BE DENIED

I.     The Complaint on File at the Time of Removal is Controlling

As the Supreme Court held over 70 years ago "the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 291 (1938). "[I]f jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy,* 498 U.S. 426, 428 (1991). Therefore, because this Court had jurisdiction over this matter at the time defendants removed the case, this Court continues to have jurisdiction of this case notwithstanding plaintiff's subsequent attempt to amend his complaint.

Moreover, this Court has consistently rejected similar attempts by plaintiffs to manipulate jurisdiction by amending a complaint post-removal. For example, in *Zuurbier v. MedStar Health, Inc.,* 306 F. Supp.2d 1, 6-7 (D.D.C. 2004), this Court agreed with the defendants' argument that plaintiff's "sole reason for the amendment to the initial complaint was to defeat federal jurisdiction," and held that plaintiff's "original complaint controls the jurisdictional questions." *See also Kopff v. World Research Group, LLC,* 298 F.Supp.2d 50, 57 (D.D.C. 2003) (holding that "plaintiffs cannot subsequently alter their pleading or position in order to defeat removal"); *Williams v. Purdue Pharma Co.,* 2003 WL 24259557, 5 (D.D.C. 2003) (although the complaint was "carefully drawn to avoid federal jurisdiction," the Court denied plaintiffs' motion for remand because the original complaint "described their remedy broadly enough to meet the requirements of §1332 and to allow defendants to remove the case to federal court.")

Here, plaintiff's proposed amended pleading is nothing more than a transparent attempt to disguise his class action lawsuit as a private attorney general suit so that he may forum-shop for the venue that suits his preferences. Nevertheless, as the original Complaint on file at the time of removal is the only relevant pleading for purposes of removal, plaintiff cannot divest this Court of its jurisdiction by seeking to amend his Complaint.

II.  <u>Defendants' Notice of Removal Was Timely</u>

The timeline for the removal of cases to federal court is set forth in 28 U.S.C. § 1446(b). That section provides:

> [t]he notice of removal of a civil action or proceeding shall be filed within thirty day after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

On March 16, 2010, plaintiff filed a Complaint commencing this action. (See Docket Entry No. 1, Notice of Removal, Exhibit A). Thereafter, the Superior Court of the District of Columbia certified that the Summons, Complaint, and Initial Order were mailed to defendants on March 22, 2010. (See Docket Entry No. 1, Notice of Removal, Exhibit A). Defendants received a copy of the Summons, Complaint, and Initial Order by mail on March 24, 2010. (See Docket Entry No. 1, Notice of Removal, Exhibit A). Defendants filed their notice of removal on April 23, 2010. (See Docket Entry No. 1, Notice of Removal). Because defendants filed their notice of removal within thirty days after service of the Complaint, removal is timely under 28 U.S.C. §1446(b).

Hinging his motion on the language in § 1446(b) which states "through service or otherwise," plaintiff now contends in his motion to remand that the thirty-day removal period under § 1446(b) began on March 4, 2010 (or three days thereafter), when he mailed a letter and

copy of his draft complaint to defendants. (See Docket Entry No. 7, Motion to Remand at ¶8; see also Letter dated March 4, 2010, Gianninoto Cert., Exhibit C). However, there is no evidence that plaintiff's draft complaint was actually filed, much less served with a copy of the summons (and no evidence of the summons itself). (See Letter dated March 4, 2010, Gianninoto Cert., Exhibit C). This fact is crucial because the Supreme Court has specifically held that the thirty-day period does not begin to run until a summons has been formally served on the defendant – even when a copy of the complaint had previously been served on the party in an informal manner.

In *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), the plaintiff sent a courtesy copy of its file-stamped complaint upon defendant by facsimile three days after filing, but did not serve a summons until three weeks later. *Id.* at 348. The defendant removed the case forty-four days after receiving the facsimile copy of the complaint. *Id.* The plaintiff moved to remand the case to state court, arguing that its service of a courtesy copy of the complaint by facsimile started the thirty-day time period for removal. *Id.* The District Court denied plaintiff's motion to remand, holding that the time period for removal under § 1446(b) did not begin to run until a summons was served on the defendant. *Id.* at 349. On appeal, the Eleventh Circuit reversed finding that the words "through service or otherwise" in § 1446(b) meant that service of the complaint by facsimile (or other informal means) began the removal period regardless of when the formal summons was served on the defendant. *Id.*

The Supreme Court reversed, rejecting the Circuit Court's holding that informal service of a complaint, in and of itself, triggered the time for removal. *Id.* at 347-348. The Court specifically cited the "bedrock principle" that an individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action and brought under a court's authority,

by formal process, i.e., a complaint accompanied by a summons. *Id.* Service of process, the Court explained, "is fundamental to any procedural imposition on a named defendant. . . . In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Id.* at 350. Thus, the Court held, the removal period under § 1446(b) "is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, *but not by mere receipt of the complaint unattended by any formal service.*" *Id.* (emphasis added).

Applying the principles established by the Supreme Court in *Murphy Brothers* to the present action, it is clear that the removal period did not begin to run, as plaintiff would have it, when he mailed a letter with a copy of the draft, un-filed complaint to defendants on March 4, 2010. *See Holmes v. PHI Service Co.*, 437 F.Supp.2d 110 (D.D.C. 2006) (under *Murphy Brothers*, "the language of 28 U.S.C. § 1446(b) does not permit the thirty-day window for removal to be triggered by informal means of conveying the summons and complaint to the defendant"). Since the informal submission of a complaint to a party cannot trigger the running of the removal clock, the earliest point in time that the removal clock could have been triggered was when defendants received the summons on March 24, 2010. (See Docket Entry No. 1, Notice of Removal, ¶2). Since defendants filed the notice of removal less than thirty days after receiving the summons and Complaint, removal of this action was timely under § 1446(b).

III.    This Court Has Jurisdiction Under the Class Action Fairness Act

This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d)(2), which provides, in relevant part: "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or

value of $5,000,000, exclusive of interest, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." According to CAFA, "the term 'mass action' means any civil action … in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," except that the federal court may only assert jurisdiction over each plaintiff whose individual claims satisfy the $75,000 jurisdictional amount in controversy requirement. 28 U.S.C. §1332(d)(11)(B)(i). CAFA further provides that when "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action," the suit will not be deemed a mass action, and thus will not be removable. 28 U.S.C. §1332(d)(11)(B)(ii)(III).

A.    Class Action

CAFA defines "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §1332(d)(1)(B). Congress intended for CAFA "to expand substantially federal court jurisdiction over class actions." S. Rep. No. 109-14, at 43 (2005); see also *Palisades Collections, LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008) (discussing the expansion of federal court jurisdiction over class actions). To that end, the legislative history charges that the definition of a "class action" must be "interpreted liberally." S. Rep. No. 109-14, at 35. Specifically, the Senate Report states: "[CAFA's] application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority. Generally speaking, *lawsuits that resemble a purported class action should be considered a class action for the*

*purpose of applying these provisions.*" *Id.* (emphasis added).  This language is straightforward and calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name.  *See id.; see also State of Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 423-24 (5th Cir. 2008) (stating that a party cannot evade federal jurisdiction by failing to label its case as a class action in the pleadings, and the court must look beyond labels used in the complaint to determine the true nature of the claims).

Despite plaintiff's contentions otherwise, it is evident from the face of plaintiff's Complaint that he is bringing a class action lawsuit.  The Complaint merely recycles, word-for-word, the material allegations that form the basis of a class action complaint that was filed in the District of New Jersey on May 30, 2006, captioned *Elias, et al. v. Ungar's Food Products, Inc.* and amended on August 25, 2006, D.N.J. 06-2448 (KSH).  (See Docket Entry No. 1, Notice of Removal, Exhibit B).  Indeed, in his pre-suit correspondence threatening litigation, plaintiff specifically stated, "[m]y civil action lawsuit will be based on *the same basic allegations* as filed in the federal court in Newark against Unger's Food Products Inc., under Civil Action No. 06-cv-2448."  (See Letter dated January 12, 2010, Gianninoto Cert., Exhibit A) (emphasis added).  Similarly, in a subsequent pre-suit letter to defendants, plaintiff reiterated that "*[t]he allegations will be the same* as the allegations [sic] filed against your companies in the United States District Court in Newark, New Jersey."  (See Letter dated February 17, 2010, Gianninoto Cert., Exhibit B) (emphasis added).  Plaintiff even admits that he first became aware of the purported basis for his allegations in the Complaint as a result of viewing the *Notice of Pendency of Class Action* ("Class Notice") in a USA Today Newspaper dated February 17, 2009.  (See Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶12).  Therefore, notwithstanding

plaintiff's avoidance of the terms "class" or "class action" in his Complaint, the substance of his allegations demonstrate that this case is nothing more than a copy-cat class action, and as such it falls squarely within the purview of CAFA. *See* 28 U.S.C. §1332(d)(1)(B); *see also Caldwell v. Allstate Ins.*, 536 F.3d 418, 424 (5th Cir. 2008) ("[F]ederal courts look to the substance of [an] action and not the labels that the parties may attach").

In a decision directly on point with this case, the District of Columbia Superior Court dismissed a plaintiff's CPPA claim to recover monetary damages on behalf of himself and in a representative capacity for similarly situated purchasers where plaintiff attempted to circumvent the class action mechanism under District of Columbia Superior Court Rule of Civil Procedure 23 ("Rule 23"). *Margolis v. U-Haul*, 2009 WL 5788369, 15 (D.C. Super. Ct. Dec. 17, 2009). After conducting an extensive analysis of the meaning, legislative history, and purpose of the CPPA, the *Margolis* Court held that "[n]othing in the statute indicates any intention by the legislative branch to abrogate he requirements of Rule 23 in cases where an individual is seeking money damages under the CPPA on behalf of third parties. *Id.* Rather, the applicability of Rule 23 to claims for money damages brought under the CPPA on behalf of third parties "harmonizes the plain language of the statute with its legislative history, which indicates that the provision of the CPPA permitting representative actions was added specifically to address claims for injunctive relief and for the equitable remedy of disgorgement, as opposed to damages." *Id.* As such, the *Margolis* Court concluded that a plaintiff cannot bring a "representative" claim for money damages on behalf of third parties without complying with class action procedures.[1] *Id.*

---

[1] After dismissal, the plaintiff in *Margolis* filed an amended complaint in the Superior Court, "in a representative capacity on behalf of the general public" and styled this time as a class action pursuant to "Superior Court Rule 23(a)," to comply with the requirements of Rule 23.

Just as in *Margolis*, plaintiff here has sought monetary damages (including statutory treble damages), on behalf of himself and in his representative capacity on behalf of the general public of the District of Columbia pursuant to the CPPA. *See Margolis*, 2009 WL at 3. And, as was the case in *Margolis*, the instant suit is a class action.

Based upon his proposed Amended Complaint, plaintiff now takes the position that his class action is actually a private attorney general suit brought on behalf of the general public. In support of his argument, plaintiff recently requested that this Court take judicial notice of two recent decisions, *Breakman v. AOL, LLC*, 545 F. Supp.2d 96, 101 (D.D.C. 2008) and *Grayson v. AT&T*, 980 A.2d 1137, 1155-1157 (D.C. Cir. 2009). (See Docket Entry No. 8). The *Grayson* opinion cited by plaintiff has been vacated, *per curium*, by the District of Colmbia Circuit Court of Appeals. *Grayson v. AT&T*, 989 A.2d 709 (D.C. Cir. 2010). Moreover, the *Breakman* and *Grayson* decisions do not support plaintiff's claim that his class action is actually a private attorney general suit; in fact, those decisions only further illuminate the distinction between plaintiff's class action and an attorney general suit brought solely on behalf of the general public.

In *Breakman v. AOL*, the Court ruled that the plaintiff's suit alleging unlawful trade practices against AOL was a private attorney general suit brought *solely* on behalf of the general public under the CPPA, and not a class action. *Breakman v. AOL, LLC*, 545 F. Supp.2d 96, 101 (D.D.C. 2008). The *Breakman* Court pointed to CAFA, which provides that where "all of the claims in the action are asserted on behalf of the general public (*and not on behalf of individual claimants* or members of a purported class) pursuant to a State statute specifically authorizing such action," the suit will not be deemed a mass action and will not be removable pursuant to 28 U.S.C. §1332(d)." 28 U.S.C. §1332(d)(11)(B)(ii)(III) (emphasis added). There,

the plaintiff's CPPA action was brought *solely* on behalf of the general public, and *not* "in his individual capacity." *Breakman*, 545 F. Supp.2d at 101. Accordingly, the *Breakman* Court determined that the plaintiff's action was brought by way of a "separate and distinct procedural vehicle from a class action," such that the case was not removable under CAFA.

Likewise, in *Grayson v. AT&T*, the District of Columbia Court of Appeals did "not address the applicability of Rule 23 to purported 'representative' claims for damages under the CPPA on behalf of third parties." *Margolis*, 2009 WL at 7 (*discussing Grayson v. AT&T*, 980 A.2d 1137, 1155-1157 (D.C. Cir. 2009)). Rather, the *Grayson* Court held that the plaintiff did not need to allege that he himself suffered injury in order to bring a *qui tam* action on behalf of the District of Columbia to recover abandoned pre-paid calling card deposits under the CPPA which should have escheated to the District.[2] *Id.*

That the *Breakman* and *Grayson* decisions have no application here was best explained by the *Margolis* Court. *Margolis*, 2009 WL at 7. The *Margolis* Court stated that "Mr. Margolis is not seeking to recover property allegedly owed to the District of Columbia, but rather is seeking the very different remedy of money damages on behalf of consumers who rented trucks from U-Haul in the District after seeing the allegedly deceptive advertisement." *Id.* Thus, "*Grayson* does not address that type of claim, much less the applicability of Rule 23 in the circumstances presented here." *Id.* The *Margolis* Court further noted that in *Breakman*, the Superior Court "had no occasion to reach the question presented here regarding the applicability of Rule 23 to 'representative' claims for damages on behalf of third parties under the CPPA." *Id.*

---

[2] After the District of Columbia Court of Appeals decided *Grayson*, the plaintiff in *Breakman* moved for hearing *en banc. Id.* at 7-8, n. 13. The *Grayson* defendants subsequently moved for hearing *en banc*, and the District of Columbia Circuit Court of Appeals, *sua sponte*, consolidated the appeals to consider the standing issues raised in those cases, and vacated the earlier *Grayson* opinion, per curium, which is the opinion upon which plaintiff relies. *Id.*; *see Grayson v. AT&T*, 989 A.2d 709 (D.C. Cir. 2010). The consolidated appeal remains pending. *Id.*

(*citing Breakman v. AOL, LLC*, No. 08-000532 (D.C. Super. Ct. unpub. order, July 31, 2008)).

Just as in *Margolis, Breakman* and *Grayson* are inapplicable to plaintiff's claims.

Finally, further solidifying the distinction between a class action and a private attorney general suit, this Court recently held that a non-profit organization's CPPA action did not require compliance with Rule 23 because, unlike a class action, it was brought *solely* on behalf of the general public. *Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp.2d 132, 137-138 (D.D.C. Jan. 15, 2010). In distinguishing NCL's claim from that of the CPPA claim found to be a class action in *Margolis*, the *NCL* Court explained, "[u]nlike Breakman and NCL, by suing on behalf of himself and others similarly situated, Margolis essentially brought a class action suit even though he did not file it as such." *Id.* at 138; *see also Margolis*, 2009 WL at *3. The *NCL* Court concluded that "NCL's suit falls squarely within this [CAFA] exception: it is a civil action in which the *sole* claim is asserted on behalf of the general public pursuant to a D.C. Code provision that specifically authorizes such action. As such, it is not a mass action removable under CAFA." *Id.* at 136-137 (emphasis added).

Likewise, in contrast with *Breakman, Grayson* and *NCL*, and in accord with *Margolis*, plaintiff here has sought monetary damages (including statutory treble damages), on behalf of himself and in his representative capacity on behalf of the general public of the District of Columbia. In his Complaint, plaintiff specifically alleges that he "purchased defendant's products named herein in the District of Columbia between the period of May 30, 2000 and August 31, 2007" and repeatedly states throughout his Complaint that he brings his CPPA claim individually and on behalf of third parties – the "general public." (Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶¶1, 5, 8, 12, 13, 16). Thus, in contrast with *Breakman, Grayson* and *NCL*, and in accord with *Margolis,* plaintiff here does not bring this action as a

"private attorney general," *solely* on behalf of the general public, but rather as a "representative" plaintiff on behalf of himself and third parties. Accordingly, this case is a class action lawsuit, and this Court has jurisdiction pursuant to CAFA.

      B.    <u>Diversity</u>

      CAFA significantly expanded federal diversity jurisdiction, eliminating the complete diversity prerequisite and requiring only that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(d)(2)(A). As accurately alleged in the Complaint, "Defendant Ungar's Food Products Inc. is a corporation organized under the laws of the State of New Jersey" and "Defendant Sensible Foods LLC is a limited liability company organized under the laws of the State of New Jersey." (Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶6). Likewise, both Defendants have their principal place of business in New Jersey. (*Id.*) The Complaint further alleges that "Plaintiff is a legal resident of the State of Virginia." (Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶5). Accordingly, complete diversity of citizenship exists between plaintiff and defendants.

      C.    <u>Number of Represented Persons</u>

      CAFA requires that the represented persons total at least 100. 28 U.S.C. §1332(d)(5). As alleged in the Complaint, the number of represented persons is "between 10,000 and 100,000 individuals." (Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶14). Therefore, this requirement is also satisfied.

      D.    <u>Amount in Controversy</u>

      Under CAFA, the claims of individual class members are aggregated in order to determine the amount in controversy. 28 U.S.C. §1332(d)(6). This subsection is "interpreted

expansively." S. Rep. 109-14, at *40. In fact, "[i]f a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied). And if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." *Id.*

The amount in controversy includes both traditional recoveries, such as restitution, as well as statutory penalties. *See Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 324-25 (5th Cir. 2008) (finding CAFA's amount in controversy satisfied where statutory damages could amount to $1,500 per violation of Telephone Consumer Protection Act and complaint alleged 4,000 violations); *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008) (holding CAFA's amount in controversy satisfied where defendant showed that the number of customers within the plaintiff's proposed class multiplied by the minimum statutory damages of $200 per customer exceeded $5 million); s*ee also Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000-01 (9th Cir. 2007) (calculating aggregated amount of statutory penalties to determine whether CAFA's amount in controversy was met for alleged violations of state wage laws). Where, as here, attorneys' fees are provided by statute, they also should be included in the amount in controversy determination. *In re Lorazepam & Clorazepate Antitrust Litig.*, 2004 U.S. Dist. LEXIS 352, *15 (D.D.C. 2004) ("It is also clear that attorneys' fees should be factored into the jurisdictional amount.")

Defendants dispute the allegations of wrongful conduct set forth in the Complaint but for purposes of establishing the amount in controversy, defendants must rely upon the allegations of the amount in controversy specified in the Complaint. *See Nwachukwu v. Karl,*

223 F. Supp.2d 60, 66 (D.D.C. 2002) (*citing St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938) ("[t]he amount in controversy is established at the commencement of the action."); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 2004 U.S. Dist. LEXIS at *17 ("the relief sought [in the complaint on file at the time of removal] controlled the jurisdictional limit.")   Here, the allegations in the Complaint sufficiently demonstrate that jurisdiction is proper under CAFA. *Chain Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 2006 WL 1134070 (M.D. Ala. Apr. 14, 2006) (it is proper for a court to determine jurisdiction under CAFA based on the allegations in a complaint).

The Complaint alleges a minimum of $5,000,000 in potential damages (Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶¶16-17).  Specifically, the Complaint alleges that Defendants violated the CPPA twenty times ("4 times per package x 5 products = 20 violations") (Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶15).  The CPPA imposes, among other things, "treble damages, or $1,500 per violation, whichever is greater, payable to the consumer."  D.C. Code §28-3905(k)(1)(A).  The Complaint specifically demands "statutory fees of between $500.00 and $1,500.00 per violation, namely between $10,000.00 and $30,000.00 per member of the general public, including plaintiff for a total award of between $5,000,000.00 and $150,000,000 in statutory fees against defendants...plus attorney fees of not less than $500.00 per hour if plaintiff obtains the services of an attorney, plus all costs, fees and expenses of the suit and such other relief as the Court deems proper based on the facts of this case."  (Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶16).  Based upon alleged statutory fees between $10,000.00 and $30,000.00 per member of the general public, including plaintiff (Paragraph 16 of the Complaint), multiplied by between 10,000 and 100,000 individuals (Paragraph 14 of the Complaint), the minimum statutory damages are not a minimum

of $5,000,000, as alleged in Paragraphs 15 and 16 of the Complaint, but rather, a minimum of $100,000,000.  Given plaintiff's allegations of enormous potential damages, the jurisdictional requirement of an amount in controversy of at least $5,000,000 is clearly satisfied.

IV.     Plaintiff's Proposed "Amended" Complaint Alleges a Class Action

As discussed in Point I, *supra*, plaintiff's initial Complaint is controlling for purposes of his motion for remand and plaintiff's proposed amended pleading should not even be considered for purposes of this motion.  Nevertheless, even if the Court were to consider plaintiff's proposed amended pleading, it would not change the fact that this case is a class action lawsuit, regardless of how plaintiff attempts to disguise his claims.

In his Complaint, plaintiff specifically alleges that he "purchased defendant's products named herein in the District of Columbia between the period of May 30, 2000 and August 31, 2007" and repeatedly states throughout his Complaint that he brings his CPPA claim individually and on behalf of third parties – the "general public." (Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶¶1, 5, 8, 12, 13, 16).  After defendants answered plaintiff's Complaint and filed their notice of removal, plaintiff attempted to file a proposed Amended Complaint without seeking leave of Court.[3]  (See Docket Entry No. 5, Motion to Amend Complaint).  Contrary to his previous allegations, plaintiff now claims in his proposed amended pleading that he is really bringing this action on behalf of the "general public," which includes himself as a member."  (See Docket Entry No. 5, Motion to Amend Complaint at ¶13).  Notwithstanding plaintiff's efforts to manipulate semantics, the substance of the allegations and nature of the relief sought can only constitute a class action pursuant to CAFA.

---

[3] The Court has indicated that it will treat plaintiff's proposed pleading as a motion to amend the Complaint, and has not yet ruled on that motion.  (See Docket Entry No. 5, Motion to Amend Complaint).

In both his Complaint and his proposed amended pleading, plaintiff seeks damages for himself and on behalf of third parties.  Paragraph 16 of plaintiff's proposed amended pleading states, "[p]laintiff ask[s] the court to award statutory fees of between $500.00 per violation to $1,500.00 per violation, namely between $15,000 and $45,000 per member of the general public *which includes plaintiff ...*"   (See Docket Entry No. 5, Motion to Amend Complaint at ¶16) (emphasis added).  Thus, whether plaintiff defines himself as an individual or a "member of the general public," the result is the same – he is seeking to recover damages as an individual and third parties.  This is a critical difference between a private attorney general suit brought solely on behalf of the general public a suit and a class action lawsuit.

Indeed, as the *Margolis* Court held, "the plaintiff may maintain claims under the CPPA for damages in his individual capacity and for injunctive relief both as an individual and in a representative capacity as a private attorney general.  But to the extent that he is asserting claims for money damages under the CPPA on behalf of third parties, the plaintiff must seek class certification and otherwise comply with Rule 23." *Margolis v. U-Haul*, Case No. 2007 CA 005245 B, 2009 WL 5788369, 5 (D.C. Super. Ct. Dec. 17, 2009).  Just as the *Margolis* Court explained, "plaintiff's interpretation would permit a 'person' suing on behalf of the general public to recover damages, owed to all affected "consumers ... invit[ing] [an] unreasonable result." *Id.*

Likewise here, plaintiff cannot have it both ways:  if he is acting as a private attorney general on behalf of the general public, he cannot seek damages on behalf of himself and third parties.  If he is seeking damages on behalf of himself and others -- as alleged in the Complaint and in plaintiff's proposed amended pleading -- then his suit is a class action subject to CAFA.  Because the Complaint and plaintiff's proposed amended complaint both seek

damages on behalf of plaintiff and others, this lawsuit is a class action over which this Court has jurisdiction pursuant to CAFA.

## DEFENDANTS' CROSS-MOTION TO DISMISS OR STAY SHOULD BE GRANTED

V.    This Action Must Be Dismissed or Stayed In Accordance With The First-Filed Rule

Years before plaintiff commenced this action, a class action complaint against defendants was filed in the District of New Jersey, captioned *Elias, et al. v. Ungar's Food Products, Inc.* and amended on August 25, 2006, D.N.J. 06-2448 (KSH), alleging the same claims on behalf of a nationwide class. (See Docket Entry No. 1, Notice of Removal, Exhibit B). The *Elias* action was certified as a class action on June 30, 2008 (D.N.J. Docket Entry No. 70) and remains pending in the District of New Jersey. After learning of the *Elias* action when he saw the Class Notice in the February 17, 2009 issue of USA Today, plaintiff filed a Complaint with identical allegations in the District of Columbia Superior Court. (See Docket Entry No. 1, Notice of Removal, Exhibit A, Complaint at ¶12). Because plaintiff's action is merely a duplication of the *Elias* action, plaintiff's Complaint herein should be dismissed, or in the alternative, stayed.

It is well-established that in the case of parallel litigation in two federal district courts, the "general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976). Indeed, "this circuit, like its sisters, follows the basic rule that a federal court should not hinder or encroach upon an action concerning the same issues pending in a coordinate federal court." *Hastings v. U.S. Senate*, 887 F.2d 332, 332 (D.C. Cir. 1989). These principles rest on considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (1976); *see also Columbia Plaza*

*Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975) ("sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided."); *see also Entines v. United States*, 495 F. Supp.2d 84, 85 (D.D.C. 2007) ("considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously.") So long as the parallel cases involve the same subject matter, the district court should resolve both suits in a single forum. *See id.*

Where, as here, there are parallel cases pending in separate federal courts, "the first court in which jurisdiction attaches has priority to consider the case." *Entines*, 495 F. Supp.2d at 85; *see also Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("[f]or more than three decades the rule in this circuit has been that where two cases between the same parties on the same cause of action are commenced in two different federal courts, the one which [was] commenced first is to be allowed to proceed to its conclusion first"). While the Court has "an ample degree of discretion in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation," *Entines*, 495 F. Supp.2d at 86 (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)), it should consider equitable factors when applying the first-filed rule. *See Columbia Plaza*, 525 F.2d at 628-629 (weighing equitable factors such as how far each case had progressed, which case was more comprehensive as to parties and claims, and which court could resolve the claims most expeditiously).

The instant action should be dismissed or stayed in the interest of comity and judicial economy, as the first-filed *Elias* action includes both plaintiff and defendants as parties, and involves the exact same subject matter. Indeed, plaintiff's Complaint merely recycles, word-

for-word, the material allegations that form the basis of the class action complaint filed in the

District of New Jersey on May 30, 2006, captioned *Elias, et al. v. Ungar's Food Products, Inc.*

and amended on August 25, 2006, D.N.J. 06-2448 (KSH). (See Docket Entry No. 1, Notice of

Removal, Exhibit B). Even plaintiff admits that he only became aware of the purported basis for

his allegations in the Complaint as a result of viewing the *Notice of Pendency of Class Action*

("Class Notice") in a USA Today Newspaper dated February 17, 2009, (See Docket Entry No. 1,

Notice of Removal, Exhibit A, Complaint at ¶12), and conceded in his pre-suit correspondence

that his "civil action lawsuit will be based on *the same basic allegations* as filed in the federal

court in Newark against Unger's Food Products Inc., under Civil Action No. 06-cv-2448." (See

Letter dated January 12, 2010, Gianninoto Cert., Exhibit A) (emphasis added).   Similarly, in a

subsequent pre-suit letter to defendants, plaintiff reiterated that "*[t]he allegations will be the*

*same* as the allegegations [sic] filed against your companies in the United States District Court in

Newark, New Jersey." (See Letter dated February 17, 2010, Gianninoto Cert., Exhibit B)

(emphasis added).

       Not only does plaintiff's action involve the exact same subject matter as the *Elias*

action, but it involves the same parties.  In his proposed amended pleading, plaintiff admits that

he "purchased defendant's product's stated herein in the District of Columbia during the period

May 30, 2000 and August 31, 2007." (See Docket Entry No. 5, Motion to Amend Complaint at

¶5).  The *Elias* Class consists of "All persons in the United States who purchased Dr. Praeger's

Frozen California Burgers, Tex-Mex Veggie Burgers, Broccoli Pancakes, Potato Pancakes,

and Spinach Pancakes from May 30, 2000 through August 31, 2007." (See Docket Entry No. 1,

Notice of Removal, Exhibit C).  Despite plaintiff's unsupported contentions otherwise, Class

counsel has confirmed plaintiff's failure to opt-out of the *Elias* Class. (See Docket Entry No. 1,

Notice of Removal, Exhibit D).  Because he failed to opt-out of the Class by the April 2, 2009 opt-out deadline, plaintiff is a member of the *Elias* Class and a party to that action.  Moreover, the defendants in the *Elias* action are the exact same defendants that plaintiff is suing in this action.  Therefore, if plaintiff's instant parallel action were sustained, it would be duplicative of the *Elias* litigation.

In *Columbia Plaza*, this Court enjoined a parallel action finding that "the same issues, and apparently to a large extent the same evidence, will be considered in both actions, and two proceedings could duplicate discovery." *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975).  The Court took "note of crowded court dockets across the country, and the consequent desirability of deciding common issues in one tribunal rather than two." *Id.* The Court further noted, "in addition to economic factors, the value of eliminating the risk of inconsistent adjudications and races to obtain judgments." *Id.*

Just as in *Columbia Plaza*, if plaintiff's instant action were allowed to go forward, it would certainly result in duplicative discovery and waste of judicial resources, and could easily result in inconsistent adjudications.  Moreover, as plaintiff's interests are already being represented (and have been since 2006) in the first-filed and more comprehensive nationwide *Elias* action, the equitable factors discussed in *Columbia Plaza* weigh heavily in favor of dismissal.  *See Columbia Plaza*, 525 F.2d at 628-629.  Indeed, since 2006, extensive discovery has been completed and the Court has entered a final pretrial order in the *Elias* class action. (D.N.J. Docket Entry No. 58).  Thus, there is no sound reason to permit the instant parallel action to duplicate three-plus years worth of litigation of the same claims, against the same defendants, in a more comprehensive, nationwide action where plaintiff is a member of the class.

In sum, the long-recognized principles against parallel litigation in the federal courts and the first-filed rule mandate that plaintiff's belated copycat action be dismissed, or in the alternative, stayed.

## CONCLUSION

Based on the foregoing, the plaintiff's motion to remand should be denied, and defendants' motion to dismiss or stay the action should be granted.

Dated:  June 7, 2010

Respectfully submitted,

Dechert LLP

/s/ Scott M. Taggart
Scott M. Taggart
D.C. Bar ID No. 988974
1775 I Street, NW
Washington DC 20006
Tel: (202) 261-3393
Fax: (202) 261-3333
Attorneys for Defendants

Of Counsel:
SAIBER LLC
James H. Gianninoto (not yet admitted *pro hac vice*)
Una Young Kang (not yet admitted *pro hac vice*)
D.C. Bar ID No. 497833
18 Columbia Turnpike
Suite 200
Florham Park, New Jersey 07932
Tel: (973) 622-3333
Fax: (973) 622-3349

Dechert LLP
Chris Michie (not yet admitted *pro hac vice*)
Suite 500
902 Carnegie Center
Princeton NJ 08540
Tel: (609) 955-3200
Fax: (609) 955-3259